## APPEAL OF THE OIL WELL PACKER CO.

[Consolidated Oil Well Packer Co. v. Jarecki Mfg. Co.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 6, 1889—Decided October 7, 1889.

Where a bill in equity is filed for discovery and an account, the bill alleging not only a partnership but also a contract between the parties imposing mutual duties of accounting, and the accounts are necessarily continuing and not single or simple, the case is a proper one for equitable cognizance, and it is error to dismiss the bill as a bill for specific performance.

Before Paxson, C. J., Sterrett, Green, Clark and Mitchell, JJ.

No. 5 July Term 1888, Sup. Ct.; court below, No. 49 March Term 1884, C. P.

On December 28, 1883, the Consolidated Oil Well Packer Co., Limited, and H. H. Doubleday and others, partners in said company, filed a bill in equity against the Jarecki Manufacturing Company, praying upon the facts therein averred for discovery and an account.

The cause being put at issue by answer and replication, it was referred to *Mr. James O. Parmlee*, as examiner and master, who filed a report finding the facts following:

1. On March 1, 1879, H. H. Doubleday, Lyman Stewart, W.

L. Hardison, R. R. Armour and the Jarecki Manufacturing Company, Limited, formed a joint stock company under the laws of Pennsylvania authorizing limited partnerships, under the name of the Consolidated Oil Well Packer Company, Limited, for the purpose of manufacturing and selling oil well packers, and licensing others to manufacture and sell the same. The interests of the original partners are now vested in the plaintiffs in this suit. The capital stock of the association was $50,000, and was paid in full by each member contributing certain letters patent owned or controlled by him, at an agreed valuation, the whole aggregating said amount.

2. On April 5, 1879, a contract was entered into between the Consolidated Oil Well Packer Company, Limited, and the Jarecki Manufacturing Company, Limited, which was in substance a license by the former to the latter to manufacture and sell oil well packers at $40 each, out of which the licensees should first deduct $9 for cost of manufacture, and 10 per cent for expense of selling, and should then from the balance deduct the licensors' bills or requisitions on them for expenses of litigation and advertising, and remit the balance to the licensors, less 27½ per cent thereof, retained for themselves.

3. The licensors substantially complied with their undertakings in said contract, but on account of alleged violations thereof by the licensees, in due form notified them on August 18, 1880, that said license was revoked.

4. The defendants refused to acquiesce in this revocation of the license, and still continue to manufacture and sell packers under the patents of the Consolidated Oil Well Packer Company, Limited, but have not accounted to the licensors since September 1, 1880.

5. By the said contract the defendants were granted the exclusive right to manufacture and sell packers in the United States, except that the licensors reserved the right to annually manufacture and sell 10 packers in the state of California.

6. Soon after this attempted revocation, the licensors began to manufacture and sell packers in the oil country, and abrogated that clause of the license which fixed the price of packers, by advertising them for sale at a lower rate without the consent of the licensees.

7. The master finds the said contract or license to be still in

force between the parties, with the exception of that clause fixing the price of packers at $40.

Upon the foregoing findings of fact and his conclusions of law therefrom, the master recommended a decree in substance : 1. That the defendants account to the plaintiffs for oil well packers manufactured and sold by the defendants since September 1, 1880, on a certain basis specifically stated. 2. That both plaintiffs and defendants be required to submit all their books, papers and accounts needful to ascertain and state an account between them. 3. That the case be referred to the same or another master to state such account in accordance with the findings of the master.

Exceptions filed to the report of the master by both the plaintiffs and defendants, being overruled by him, they were renewed on the filing of his report, and after argument thereof, the court, BROWN, P. J., filed the following opinion and decree :

The views we take of the case, as presented by the evidence and the report of the master, make it unnecessary to review separately the numerous exceptions filed by the parties, but in order that our opinion and judgment of them may appear of record, we sustain the plaintiffs' 1st, 2d and 3d exceptions, and dismiss the plaintiffs' 4th and 5th exceptions. The defendants' exceptions are all dismissed except such, and such parts of them, as deny the plaintiffs' right to an account, under the facts as found by the master. The defendants' exceptions denying such right are sustained. Our reasons for sustaining the exceptions of defendants to the extent that we do, may be summarized as follows :

On April 5, 1879, the Consolidated Oil Well Packer Company and the defendants entered into a contract in writing by which it was agreed that said company " fully and exclusively " licensed the defendants to manufacture and sell oil well packers, under certain patents enumerated in the writing, and such as should be thereafter obtained or controlled by it; the defendants, in consideration thereof, agreeing to account and pay to said company upon the terms specified in the contract. The bill asks for an account. It is framed in a double aspect and asks for alternative relief, namely : If it shall be found that the contract is in force, that then the defendants should be

held to account for packers sold at the contract price according to the terms agreed upon; if it shall be found that the contract is not in force, and that the defendants are partners with the Consolidated Oil Well Packer Company, that then they be held to account as such partners.

The master finds that the contract or license, as it is sometimes called, is "still in full force between the parties, with the exception of that clause fixing the price of packers at $40." We have then to consider only the liability of the defendants to account under the contract, the pleadings, the evidence, and the findings of the master relating thereto.

By the 13th paragraph of the contract it is provided that upon failure of defendants to render the accounts and make the payments as agreed, the company (plaintiffs) may terminate the license by giving a written notice to the defendants that unless the accounts are rendered and payments made within thirty days the license shall be declared void. Under this clause of the agreement, and averring non-compliance therewith, the plaintiffs on July 17, 1880, did serve such notice, and on the expiration of the thirty days, to wit: on August 18, 1880, the plaintiffs, again asserting such non-compliance, notified defendants that the license given in the contract of April 5, 1879, "is hereby terminated and declared void." It does not appear by the findings of the master whether the defendants were or were not guilty of the defaults, which under the contract justified the plaintiffs in terminating the license. 'From the fact, however, that he finds the contract still in force, we think we may infer that there was no such default. On October 16, 1880, the defendants notified the plaintiffs that they did not "consider the said agreement as terminated, but as still in full force and effect," and assert violations of the agreement by the plaintiffs, and announce a purpose to hold them responsible for damages.

We concur with the master when he says, in his very able and careful report, that had the defendants consented to the termination of the contract, they would not be liable to a decree for an account, because, as he finds, there has been a full account to the time when the contract would have been terminated. But we do not think that acquiescence in the plaintiffs' attempted termination of the contract was necessary to exempt

defendants from liability to account in this proceeding. The defendants could not have so acquiesced, without impliedly admitting what they were careful to deny, namely, default in respect to the matters on which the plaintiffs based the right to declare the contract void.

Under the finding that the contract of April 5, 1879, is in full force, the plaintiffs' right to an account must be determined by the terms of that contract. By its terms, and in consideration of the stipulations of the defendants, the plaintiffs bound themselves to confer on defendants the full and exclusive right to manufacture and sell oil well packers under patents then alleged to be owned by the plaintiffs, and such as should thereafter be obtained or controlled by them. With this obligation resting on the plaintiffs, on August 18, 1880, as before mentioned, they declared the contract terminated and void, and soon after, as the master specifically finds, they commenced to manufacture and sell oil well packers in the oil country, and without the consent of the defendants abrogated that clause of the license which fixed the prices of packers, by advertising them for sale at a lower rate than the agreed price.

On October 27, 1880, in a letter to defendants the plaintiffs say "In your letter of the 22d you also object to incurring more expense in bringing suits &c. Will you be kind enough to inform us by what right or authority you object, seeing that your contract was cancelled in accordance with its own provision in August last."

The plaintiffs went further and published to the world that the contract with defendants had been annulled, and by publication in the Bradford Era of October 28, 1880, say: "Our license to the Jarecki Manufacturing Company, Limited, was cancelled in August, 1880. All packers now made or sold by them are unauthorized and illegal, and parties purchasing from them after this date run a great risk in doing so."

The main inducement for defendants to enter into the contract was a monopoly of the manufacture and sale of the packers covered by these patents owned and controlled by the plaintiffs. It appears to us that the plaintiffs, by engaging in the manufacture and sale of packers, pressing them upon the market at an under price, and publishing to the trade that those made and sold by defendants were unauthorized and ille-

Opinion of Court below.

gal, have precluded themselves from invoking the aid of a court of equity to enforce the contract against the defendants.

We regard this as in substance a bill for the specific enforcement of a contract, in a case where the consideration is entire, and where by the express findings of the master, clearly justified by the evidence, the plaintiffs have failed to perform their part of the agreement, by acts defeating the advantages and profits for which the defendants stipulated. We understand that it is an elementary rule in equity that specific performance is of grace and not of right, and if there be anything inequitable in it, the court will withhold its assistance, and leave the parties to their legal remedies on their agreement.

The only remaining question is whether the answer of the defendant raises the defence indicated? In subdivision " a " of the 19th paragraph of the answer, it is averred that the plaintiffs utterly failed to maintain for defendants a monopoly of the exclusive right to the manufacture, sale and use of oil well packers, as they covenanted to do by the agreement. This, we think, is sufficient to let in the evidence of such conduct and acts of the plaintiffs as defeated the monopoly for which it had contracted.

For the reasons stated, we sustain the 30th exception to the master's report filed by defendant, namely: " The master erred in not dismissing the bill in this case at the cost of the plaintiffs."

And now, September 26, 1887, this cause came on to be heard upon exceptions to the report of the master, and having been fully argued by counsel, it is ordered, adjudged and decreed that the bill be dismissed at the cost of the plaintiffs, and without prejudice to the plaintiffs to maintain their actions at law upon the agreement or otherwise.

Thereupon the plaintiff company took this appeal, assigning as error, inter alia, the decree dismissing the bill, etc.

*Mr Samuel T. Neill* (with him *Mr. W. G. Trunkey*), for the appellants.

*Mr. J. C. Sturgeon* and *Mr. S. A. Davenport* (with them *Mr. Geo. P. Griffith*), for the appellees.

OPINION, MR. JUSTICE GREEN:

We are unable to agree with the learned court below in the conclusion dismissing the plaintiffs' bill. The defendants' exceptions were all dismissed except those which denied the right to an account. As this ruling practically sustains the findings of the master upon the matters of fact in dispute, and as the master found that the plaintiffs had substantially performed their stipulations of the contract between the parties, we have difficulty in understanding why the whole substance of the litigation should not be disposed of in this equitable proceeding. Undoubtedly, equity has jurisdiction, whether the relation established by the contract be one of partnership or merely one of licensor and licensee. Mutual duties of accounting, under the contract, are imposed upon both parties; and, as the accounts are continuing and not single or simple, that circumstance is alone sufficient to bring the case within equitable cognizance. It would scarcely be possible to dispose of such a controversy in a common-law proceeding. Whatever may be the rights of the contending parties, under the various allegations and proofs presented upon both sides, it is manifest they are of quite too complicated a character to be dealt with by a jury.

The reason given by the court below for dismissing the bill, as we understand it, is, that it is a bill for specific performance, and, as the plaintiffs failed to perform their part of the contract, they cannot claim performance by the defendant. The bill as we read it is a bill for discovery and for an account, and is in no sense a bill for specific performance within the technical meaning of that term. As a matter of course, all partnership bills and all bills for an account seek to obtain the redress which would have been obtained if the contracts of the parties had been performed. But this redress is compensation for non-performance, and not specific performance in the technical sense of doing the particular thing which the contract requires to be done, such as the conveyance of a specially described tract of land, or some unusual or extraordinary character of chattel. We cannot regard this bill as a bill for specific performance, in any point of view, and hence cannot apply to it the rule which controlled the court below in dismissing it. These parties are in litigation respecting their ultimate rights

as against each other, under a contract conferring mutual rights and imposing mutual obligations. Various matters of disputed fact arise, under the allegations of the parties, and the determination of those matters is essential to the ascertainment of their respective rights. That determination can only be adequately obtained by a proceeding in equity, such as this is, and we can see no reason why the case should not proceed to final hearing upon all its merits.

The question now before us is scarcely more than a question of jurisdiction to determine the case on its merits. We think the decree recommended by the master should have been made, and when that is done, and the further and final proceedings have taken place, so that a final decree is reached, the full merits of the controversy will be in proper shape for the action of the court below, and for review in this court, if that shall be desired.

The decree of the court below is reversed at the cost of the appellees, and the record is remitted for further proceedings in accordance with the decree recommended by the master.